# 24-1238-cv

## In the United States Court of Appeals for the Second Circuit

---

PHILIP BALDEO; 156 WEST 15TH STREET CHELSEA LLC,
PLAINTIFFS-APPELLANTS

*v.*

AIRBNB, INC.,
DEFENDANT-APPELLEE

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE SOUTHERN DISTRICT OF NEW YORK (CIV. NO. 20-7771)*
*(THE HONORABLE PAUL G. GARDEPHE, J.)*

---

**BRIEF OF APPELLEE AIRBNB, INC.**

---

KANNON K. SHANMUGAM
ABIGAIL FRISCH VICE
THOMAS E. NIELSEN
KARINA M. SHAH
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7300*
*kshanmugam@paulweiss.com*

## CORPORATE DISCLOSURE STATEMENT

Appellee Airbnb, Inc., has no parent corporation, and no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

Statement of jurisdiction ............................................................................1

Statement of the issues ...............................................................................1

Introduction .................................................................................................2

Statement of the case .................................................................................3

    A.  Background ........................................................................................3

    B.  Proceedings below ...........................................................................6

Summary of argument ...............................................................................9

Argument ...................................................................................................12

    I.     Appellants lack standing to pursue, and forfeited, this appeal ...............................................................................................12

          A.  Appellants lack standing .........................................................12

          B.  Appellants failed to object to the report and recommendation and thus forfeited further review ...........22

    II.    The district court properly dismissed the action for failure to state a claim .........................................................................26

          A.  Appellants failed to state a negligent-misrepresentation or general negligence claim .................................................27

          B.  Appellants failed to state a fraud claim ................................32

          C.  Appellants failed to state a claim under Section 349 of New York's General Business Law ......................................36

    III.  This Court should affirm dismissal because all claims are untimely ..........................................................................39

          A.  Appellants' negligent-misrepresentation and fraud claims are untimely ..............................................................40

          B.  Any general negligence claim is untimely .............................43

          C.  Appellants' Section 349 claim is untimely .............................46

    IV.  The district court appropriately denied leave to amend ...............48

          A.  Appellants proposed no amendments below .........................48

          B.  Appellants propose only futile amendments here ................50

Conclusion .................................................................................................54

# TABLE OF AUTHORITIES

## CASES

Page

*A.H.A. General Construction, Inc.* v. *Edelman Partnership*,
737 N.Y.S.2d 85 (App. Div. 2002) ......................................................41

*Aetna Casualty & Surety Co.* v. *Aneiro Concrete Co.*,
404 F.3d 566 (2d Cir. 2005) ................................................28, 29, 30

*Ajdler* v. *Province of Mendoza*, 890 F.3d 95 (2d Cir. 2018) .............................40

*Alexander* v. *Saul*, 5 F.4th 139 (2d Cir. 2021) ....................................................24

*Anschutz Corp.* v. *Merrill Lynch & Co., Inc.*,
690 F.3d 98 (2d Cir. 2012) ..................................................14, 27, 28

*Bai* v. *Tegs Management, LLC*, No. 22-681,
2023 WL 6458542 (2d Cir. Oct. 4, 2023)...........................................33

*Baker* v. *Saint-Gobain Performance Plastics Corp.*,
232 F. Supp. 3d 233 (N.D.N.Y. 2017), *aff'd in part and
dismissed in part*, 959 F.3d 70 (2d Cir. 2020) ........................................51, 52

*Bayerische Landesbank* v. *Aladdin Capital Management LLC*,
692 F.3d 42 (2d Cir. 2012) ..................................................................29

*Bibicheff* v. *PayPal, Inc.*, 844 Fed. Appx. 394 (2d Cir. 2021) ...........................38

*City of New York* v. *Baldeo*, No. 450126/2018 (N.Y. Sup. Ct.)...........................6

*City of New York* v. *Group Health Inc.*,
649 F.3d 151 (2d Cir. 2011) ................................................................47

*City of New York* v. *Smokes-Spirits.Com, Inc.*,
911 N.E.2d 834 (N.Y. 2009)..........................................................17, 18

*City Store Gates Manufacturing Corp.* v. *Empire Rolling Steel
Gates Corp.*, 979 N.Y.S.2d 606 (App. Div. 2014)............................40

Page

Cases—continued:

*Cohen* v. *Rosicki, Rosicki & Associates, P.C.,*
　897 F.3d 75 (2d Cir. 2018) ................................................. 37

*Credit Alliance Corp.* v. *Arthur Andersen & Co.,*
　483 N.E.2d 110 (N.Y. 1985) .............................................. 14

*Dembeck* v. *220 Central Park South, LLC,*
　823 N.Y.S.2d 45 (App. Div. 2006) ................................... 16

*Department of Labor* v. *Triplett,* 494 U.S. 715 (1990) ....................... 18

*Derdiarian* v. *Felix Contracting Corp.,* 414 N.E.2d 666 (N.Y. 1980) ............. 53

*Eaton, Cole & Burnham Co.* v. *Avery,* 83 N.Y. 31 (1880) ................................. 35

*Eiseman* v. *State,* 511 N.E.2d 1128 (N.Y. 1987) ................................... 14

*Elliott* v. *City of New York,* 747 N.E.2d 760 (N.Y. 2001) ................................. 31

*Fandy Corp.* v. *Lung-Fong Chen,* 691 N.Y.S.2d 572 (App. Div. 1999) ........... 41

*Fenstermaker* v. *Obama,* 354 Fed. Appx. 452 (2d Cir. 2009) ........................... 19

*Ferreira* v. *City of Binghamton,* 975 F.3d 255 (2d Cir. 2020) ........................ 30

*Filler* v. *Hanvit Bank,* 156 Fed. Appx. 413 (2d Cir. 2005) .......................... 35, 36

*Fresh Air for the Eastside, Inc.* v. *Waste Management of New
　York, LLC,* 405 F. Supp. 3d 408 (W.D.N.Y. 2019) .................................. 51, 52

*Frintzilas* v. *DirecTV, LLC,* 731 Fed. Appx. 71 (2d Cir. 2018) ....................... 18

*Gray* v. *Wackenhut Services, Inc.,* 446 Fed. Appx. 352 (2d Cir. 2011) ........... 53

*High Tides, LLC* v. *DeMichele,* 931 N.Y.S.2d 377 (App. Div. 2011) ............... 14

*Horoshko* v. *Citibank, N.A.,* 373 F.3d 248 (2d Cir. 2004) ................................. 49

*Kazanoff* v. *United States,* 945 F.2d 32 (2d Cir. 1991) ...................... 32

*King* v. *Crossland Savings Bank,* 111 F.3d 251 (2d Cir. 1997) ................. 14, 28

iv

Page

Cases—continued:

*Kowalski* v. *Tesmer*, 543 U.S. 125 (2004) ........................................12, 13

*Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006)...................................16

*Levin* v. *Sarah Lawrence College*,
747 F. Supp. 3d 645 (S.D.N.Y. 2024)..................................................40

*Lilakos* v. *Environmental Control Board*,
48 N.Y.S.3d 775 (App. Div. 2017) .......................................................45

*Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*, 13 F.4th 247 (2d Cir. 2021) ...................................34, 35, 36

*Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015)..................................33

*Lucente* v. *International Business Machines Corp.*,
310 F.3d 243 (2d Cir. 2002) ...............................................................50

*Luci* v. *Overton, Russell, Doerr & Donovan, LLP*,
789 Fed. Appx. 895 (2d Cir. 2019) ......................................................37

*Madison Avenue I LLC* v. *Marecheau*,
131 N.Y.S.3d 544 (App. Div. 2020) .....................................................45

*Maheshwari* v. *City of New York*, 810 N.E.2d 894 (N.Y. 2004) ................52, 53

*Marshall* v. *Hyundai Motor America*,
51 F. Supp. 3d 451 (S.D.N.Y. 2014)....................................................47

*McCarthy* v. *Olin Corp.*, 119 F.3d 148 (2d Cir. 1997) ...................................30, 32

*McCoy* v. *Feinman*, 785 N.E.2d 71 (N.Y. 2002)..........................................44

*Mental Hygiene Legal Service* v. *Cuomo*,
13 F. Supp. 3d 289 (S.D.N.Y. 2014),
*aff'd*, 609 Fed. Appx. 693 (2d Cir. 2015).......................................21

Page

Cases—continued:

*Mid-Hudson Catskill Rural Migrant Ministry, Inc.*
v. *Fine Host Corp.*, 418 F.3d 168 (2d Cir. 2005) .....................................13, 19

*Modave* v. *Long Island Jewish Medical Center*,
501 F.2d 1065 (2d Cir. 1974) ...........................................................26

*Neufeld* v. *Neufeld*, 910 F. Supp. 977 (S.D.N.Y. 1996) .......................................46

*New York State Citizens' Coalition for Children* v. *Poole*,
922 F.3d 69 (2d Cir. 2019) ........................................................19, 20, 22

*Nothnagle Home Security Corp.* v. *Bruckner, Tillet, Rossi,*
*Cahill & Associates*, 3 N.Y.S.3d 870 (App. Div. 2015)................................43

*Oddo Asset Management* v. *Barclays Bank PLC*,
973 N.E.2d 735 (N.Y. 2012).............................................................17

*Orlander* v. *Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015)......................................39

*Pasternack* v. *Laboratory Corp. of America Holdings*,
807 F.3d 14 (2d Cir. 2015) ..............................................................30

*Pescatore* v. *Pan American World Airways, Inc.*,
97 F.3d 1 (2d Cir. 1996) ...............................................................26

*Petrosky* v. *New York State Department of Motor Vehicles*,
72 F. Supp. 2d 39 (N.D.N.Y. 1999)....................................................46

*Powers* v. *Ohio*, 499 U.S. 400 (1991) ...................................................13

*Pulka* v. *Edelman*, 358 N.E.2d 1019 (N.Y. 1976).......................................32

*Rozman* v. *City of Columbia Heights*, 268 F.3d 588 (8th Cir. 2001) ..............20

*Ruffolo* v. *Oppenheimer & Co.*, 987 F.2d 129 (2d Cir. 1993)...........................50

*Santiago* v. *1370 Broadway Associates, L.P.*,
749 N.E.2d 168 (N.Y. 2001).............................................................41

Page

Cases—continued:

*Securities Investor Protection Corp.* v. *BDO Seidman, L.L.P.*,
  746 N.E.2d 1042 (N.Y. 2001)................................................35

*Singleton* v. *Wulff*, 428 U.S. 106 (1976) ........................................19, 21

*Small* v. *Lorillard Tobacco Co.*, 720 N.E.2d 892 (N.Y. 1999) ...........................39

*Spagnola* v. *Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009) .......................................36

*Spence* v. *Superintendent, Great Meadow Correctional Facility*,
  219 F.3d 162 (2d Cir. 2000) ..................................................23, 25, 26

*Sprint Communications Co.*, v. *APCC Services, Inc.*,
  554 U.S. 269 (2008).................................................................19

*Stapleton* v. *Barrett Crane Design & Engineering*,
  725 Fed. Appx. 28 (2d Cir. 2018) .........................................29

*Stutman* v. *Chemical Bank*, 731 N.E.2d 608 (N.Y. 2000) ...........................38, 39

*Thomas* v. *Arn*, 474 U.S. 140 (1985) ...........................................25

*Thompson* v. *County of Franklin*, 15 F.3d 245 (2d Cir. 1994) .........................13

*United States ex rel. Hussain* v. *CDM Smith, Inc.*,
  Civ. No. 14-9107, 2018 WL 11217206 (S.D.N.Y. Jan. 31, 2018) .................50

*United States ex rel. O'Donnell* v. *Countrywide Home Loans, Inc.*,
  822 F.3d 650 (2d Cir. 2016) ................................................34

*Ultramares Corp.* v. *Touche*, 174 N.E. 441 (N.Y. 1931) ...........................30, 34

*Vega* v. *Fox*, 457 F. Supp. 2d 172 (S.D.N.Y. 2006) ...........................16

*W.R. Huff Asset Management Co.* v. *Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ................................................19, 20

*Wax NJ-2, LLC* v. *JFB Construction & Development*,
  111 F. Supp. 3d 434 (S.D.N.Y. 2015).................................................52

vii

Page

Cases—continued:

*Wesolek* v. *Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988) ...................................23, 24

*Williams & Sons Erectors, Inc.* v. *South Carolina Steel Corp.*,
    983 F.2d 1176 (2d Cir. 1993) ...................................................................28

*WorldCom, Inc., Securities Litigation, In re*,
    303 F. Supp. 2d 385 (S.D.N.Y. 2004)...................................................48

*Zervos* v. *Verizon New York, Inc.*, 252 F.3d 163 (2d Cir. 2001) .................23, 24

## STATUTES AND RULES

28 U.S.C. § 1291 .................................................................................................1

28 U.S.C. § 1332(a)(1) .......................................................................................1

N.Y. C.P.L.R. § 213(8) ......................................................................................41

N.Y. C.P.L.R. § 214(4) ......................................................................................43

N.Y. C.P.L.R. § 214(5) ......................................................................................46

New York City Admin. Code § 27-2004(a)(8) ................................................5, 31

New York City Admin. Code § 907.2.8 ...............................................................5

New York City Building Code § 28.310................................................................31

N.Y. Gen. Bus. Law § 349 .................................................................... *passim*

Fed. R. Civ. P. 6(b) ............................................................................................24

Fed. R. Civ. P. 12(b)(6).....................................................................................18

Fed. R. Civ. P. 72(b) ..........................................................................................22

## MISCELLANEOUS

Environmental Control Board, *What Is ECB*
    <tinyurl.com/DOBfine> (last visited Apr. 23, 2025) .....................................5

## STATEMENT OF JURISDICTION

The district court granted the motion to dismiss filed by appellee Airbnb, Inc., and denied appellants Philip Baldeo and 156 West 15th Street Chelsea LLC leave to amend on March 30, 2024. App. 49-61. Appellants filed a timely notice of appeal on April 29, 2024. This Court lacks subject-matter jurisdiction because appellants do not possess standing. Otherwise, this Court has jurisdiction over this appeal under 28 U.S.C. § 1291, and the district court had subject-matter jurisdiction based on the parties' diversity under 28 U.S.C. § 1332(a)(1).

## STATEMENT OF THE ISSUES

1. Whether appellants lack standing because they seek to vindicate the rights of third parties and fail to satisfy the requirements of third-party standing.

2. Whether the district court correctly determined that appellants forfeited the right to further review when they did not timely file, or otherwise identify, objections to the magistrate judge's report and recommendation.

3. Whether the district court correctly determined that appellants failed to state any claim on the merits.

4. Whether the district court properly dismissed appellants' claims as untimely.

(1)

5.      Whether the district court properly denied appellants leave to amend their complaint when appellants proposed no amendments and any amendment would be futile.

## INTRODUCTION

In this case, appellants—the owners of a New York City apartment building—brought a panoply of meritless and time-barred claims against Airbnb in an attempt to blame Airbnb for fines assessed on appellants by New York City.  The district court correctly dismissed those claims, and either its judgment should be affirmed or the appeal dismissed for lack of standing.

*First*, appellants fundamentally seek to vindicate rights that do not belong to them and they therefore lack standing.

*Second*, as the district court correctly held, appellants forfeited their opportunity for further review by failing timely to object to the report and recommendation of the magistrate judge to dismiss the complaint and deny leave to amend.

*Third*, appellants' claims fail on the merits for a multitude of reasons.  The negligence-based claim fails to allege a duty.  The fraud claim fails to allege fraudulent intent or reasonable reliance.  For the claim brought under Section 349 of New York's General Business Law, appellants fail to allege materiality or injury.  And in any event, as to each claim, the complaint was filed after the expiration of the applicable limitations period.

*Fourth*, appellants have proposed no amendments—either in the district court or, belatedly, in this Court—that could cure the foregoing defects. In the district court, appellants generically gestured at "new claims" and "clarified arguments," but that is not sufficient to justify granting leave to amend. In this Court, for the first time, appellants propose to amend by adding financial damages and a private nuisance claim. That is too little, too late. Additional financial damages would not remedy either of the threshold problems or the numerous merits problems. Nor could appellants' proposed private nuisance claim survive a motion to dismiss.

Although there are a host of different paths to affirmance, the rationale for deciding this case in favor of Airbnb is simple. Appellants have had their day in court. They have not demonstrated that they are entitled to relief. The district court's order should be affirmed, or the appeal dismissed for lack of standing.

## STATEMENT OF THE CASE

### A.    Background

1.    As alleged in the complaint, the facts are as follows. Appellant Philip Baldeo is the sole owner of appellant 156 West 15th Street Chelsea LLC, the recorded owner of a Class A multiple-dwelling apartment building located in New York City. *See* Supp. App. 7 (¶¶ 39-40), 38 & n.1. The apartments in the building were leased to tenants who are not parties to this suit.

3

*See id.* at 3 (¶ 14). Some of those tenants subleased their apartments on appellee Airbnb's online platform. *See id.* at 3 (¶¶ 14-15), 39.

2. Appellee Airbnb operates a global online marketplace that provides individuals who wish to offer accommodations, known as "hosts," the opportunity to connect with those seeking to book accommodations, known as "guests." *See* Supp. App. 8 (¶¶ 43-45), 38. A host first creates a listing for their accommodation on Airbnb; a guest then books that accommodation for specific dates. Once the booking is made between a host and their guest, Airbnb receives a service fee for the use of its online marketplace and platform. *Id.* at 132. The complaint alleges that Airbnb does not have a real-estate broker's license. *See id.* at 3 (¶ 16).

In order to use Airbnb's online platform, the tenants in appellants' building—like all other hosts and guests on Airbnb—agreed to "comply with and be legally bound by" Airbnb's terms of service. Supp. App. 127. The tenants acknowledged, among other things, that "Airbnb is not a party to any agreements entered into between hosts and guests, nor is Airbnb a real estate broker, agent or insurer." *Id.* The tenants also understood that they bore sole "responsib[ility] for any and all [l]istings [they] post[ed]" and, as a result, "sole[] responsib[ility] for compliance with any and all laws, rules, [and] regulations." *Id.* at 129, 135. That included "local" laws or regulations. *See id.* at 135.

New York City municipal law requires Class A multiple-dwelling apartment buildings to be occupied "by the same natural person or family for thirty consecutive days or more." *See* New York City Admin. Code § 27-2004(a)(8). New York City law also imposes particular means-of-egress and fire-alarm-system requirements on buildings occupied for transient use. *See*, *e.g.*, New York City Admin. Code § 907.2.8.

3.    The subleasing by appellants' tenants precipitated inspections by New York City's Department of Buildings and Office of Special Enforcement. *See* App. 51.  On August 28, 2014, a Department inspector imposed a $8,000 fine on appellants for violating the 30-day requirement and the attendant local laws governing fire safety and means of egress.  *See* Supp. App. 4 (¶¶ 17-21), 25 (¶ 135), 144-147.  Another Department inspector imposed a $2,400 fine on October 15, 2014, for violating the same requirements.  *See id.* at 4 (¶¶ 17-21), 25 (¶ 135), 148-151.  Appellants contested both fines, each in a separate hearing before an administrative law judge on New York City's Environmental Control Board.  *See id.* at 152-163; *see also* Environmental Control Board, *What Is ECB* <tinyurl.com/DOBfine> (last visited Apr. 23, 2025) (explaining that the Board cannot conduct inspections or impose fines and can only uphold or dismiss violations).  The Board upheld both violations, and those rulings were subsequently affirmed on administrative appeal.  *See* Supp. App. 41.

5

On March 7, 2017, a Department inspector returned to the building and imposed a $57,000 fine on appellants, for violating the same requirements. *See* Supp. App. 25 (¶ 135), 41, 164-167. On September 22, 2017, another Department inspector imposed a $20,200 fine, yet again for violating the same requirements. *See id.* at 25 (¶ 135), 41, 168-171. After appellants evacuated their building, the Board again upheld those violations, and its rulings were again affirmed on administrative appeal. *See id.* at 4 (¶ 20), 41, 172-180. New York City subsequently took other criminal and civil actions against appellants in an attempt to resolve their repeated violations. *See id.* at 24-26 (¶¶ 134-138), 41.[1]

**B.  Proceedings Below**

1.  On September 23, 2020, appellants filed suit against Airbnb, seeking damages and other relief. *See* Supp. App. 28. Appellants brought causes of action for negligence, fraud, and violation of Section 349 of New York's General Business Law. *See id.* at 26-28 (¶¶ 139-152). Appellants alleged that "Airbnb negligently engaged in [renting out the apartment building] again and

---

[1] *See City of New York* v. *Baldeo*, No. 450126/2018, 2019 WL 993135, at *7 (N.Y. Sup. Ct. Mar. 1, 2019) (granting injunctive relief based partly on the finding that it was "inconceivable" that "at least two-thirds of the units in the [p]remises were used for transient occupancy without the building owner's knowledge, or at least willful blindness," and observing that appellants "certainly" knew after the first violations in 2014). Baldeo eventually settled with the City for $310,000. *See* Stipulation of Settlement and Consent Judgment at 7, *City of New York* v. *Baldeo*, No. 450126/2018 (N.Y. Sup. Ct. May 10, 2023).

again, which was a proximate cause or contribution to [appellants'] foreseeable injuries"; "Airbnb and its [m]embers leased and subleased [appellants'] apartments under false [or fraudulent] pretenses without their knowledge or consent"; and Airbnb made numerous "deceptive statements and/or omissions of material fact with regards to its legal status" as a real-estate broker, escrow agent, and lawyer. *See id.* at 26-27 (¶¶ 141, 144, 148).

2.      On March 12, 2021, Airbnb moved to dismiss the complaint on the grounds that the alleged facts failed to state a claim for relief and that the claims were in any event barred by the statute of limitations. *See* Supp. App. 30-60. Appellants filed a response and Airbnb filed a reply. *See id.* at 61-109. On April 28, 2022, the action was reassigned to another magistrate judge.

A year later, as the motion remained pending, appellants filed a letter expressing a desire to amend the complaint. *See* Supp. App. 110-111. Appellants explained that they sought to "shorten and clarify [their] arguments" and address any "valid concerns" raised by Airbnb's motion to dismiss. *Id.* Airbnb filed a letter in opposition. *See id.* at 112-113. The district court denied the application, *see id.* at 115, and referred the motion to the clerk of court for a report and recommendation by a magistrate judge.

3.      On September 29, 2023, the magistrate judge issued a report and recommendation, concluding that all claims should be dismissed and that leave to amend should be denied. The magistrate judge reasoned that, "even if all

of [appellants'] claims were timely, dismissal would still be appropriate because . . . each claim suffers from fundamental pleading deficiencies." App. 1, 13-14. The magistrate judge instructed the parties to "file any objections" to the report and recommendation within the statutory deadline of 14 days, and emphasized that failure to file timely objections would bar "any objections" to the report and recommendation on appeal. *Id.* at 29. Appellants, it is undisputed, did not timely file objections. *See* Br. of Appellants 6; App. 53.

4. Ten days after the deadline, appellants requested a stay and a 30-day extension to object to the report and recommendation. *See* App. 30-31. Appellants cited an attorney-client conflict but provided no further information as to the nature of that conflict. *See* App. 31. After an ex parte status conference before the district court, the court denied appellants' request. *See* App. 48. The court reasoned that appellants had not provided "an adequate explanation for the requested extension," and it noted that counsel had "reached an agreement on ongoing representation." *Id.*

5. On March 30, 2024, the district court adopted the magistrate judge's report and recommendation, dismissed all of appellants' claims, and denied leave to amend. *See* App. 61. The district court recognized that appellants had failed timely to object to the report and recommendation and thus forfeited their right to judicial review. *See* App. 54. But in the alternative, the district court concluded that the report and recommendation was "free of clear

8

error." App. 55. The district court thus held that appellants' claims were time-barred, *see* App. 58, and that appellants had otherwise failed to state a claim, *see* App. 60. This appeal followed.

## SUMMARY OF ARGUMENT

I.    As a threshold matter, appellants lack standing and forfeited their right to further review.

A.    Appellants lack standing to bring their claims because they seek to vindicate rights that belong, at most, to third parties—their former tenants. And appellants cannot establish either of the required elements to assert third-party standing—a close relationship with their former tenants and a hindered ability on the part of those tenants to sue.

B.    Even if appellants had standing, they did not timely file objections to, or otherwise specify any errors in, the magistrate judge's report and recommendation. They thus forfeited the right to further review of any such arguments, as the district court correctly observed. Excusing that failure is not in the interests of justice because, as the district court appropriately concluded, appellants never explained why asserting a conflict of interest prevented them from timely seeking an extension.

II.    In any event, the district court properly dismissed the action for failure to state a claim, because the allegations in the complaint fail to meet

the pleading requirements for negligent-misrepresentation, general negligence, fraud, or Section 349 claims.

A.     Appellants failed to state either a negligent-misrepresentation or general negligence claim, because the complaint alleges no facts demonstrating a duty to convey correct information or a duty of care.

B.     Appellants failed to state a fraud claim, because the complaint alleges no facts demonstrating an intent to induce or reliance.

C.     Finally, appellants failed to state a Section 349 claim, because the complaint alleges no facts demonstrating a materially misleading statement or a cognizable injury caused by the conduct of Airbnb.

III.   The district court properly dismissed the action as untimely, because the negligent-misrepresentation and fraud claims accrued more than six years before the complaint was filed, and the general negligence and Section 349 claims accrued more than three years before the complaint was filed.

A.     Appellants' negligent-misrepresentation claim, to the extent based on Airbnb's alleged misrepresentation of its legal status in the terms of service, is untimely because the claim would have accrued the first time a tenant of appellants relied on the alleged misrepresentation in listing their apartment on Airbnb.  That necessarily happened before any violation for which New York City imposed its first fine on August 29, 2014—more than six years before appellants filed their complaint on September 21, 2020.  To the extent

10

the claim was based on Airbnb's alleged omission of legal risks stemming from appellants having signed leases with their former tenants, appellants' fraud claim likewise necessarily accrued before August 29, 2014.

B.    Appellants' negligence claim is best read as sounding only in negligent misrepresentation, not general negligence.  Regardless, any general negligence claim is untimely because any allegedly unlawful rental necessarily took place more than three years before this lawsuit was filed.

C.    Appellants' Section 349 claim is untimely because the latest possible deception—a tenant's listing its apartment on Airbnb, having seen the terms of service that allegedly misrepresent Airbnb's legal status—necessarily took place more than three years before the filing of this suit.

IV.    The district court appropriately denied leave to amend because appellants failed to specify any amendments that would cure the deficiencies in the complaint, and the amendments they propose for the first time in this Court would be futile.

A.    The district court did not abuse its discretion in denying leave to amend, because appellants proposed no specific amendments capable of judicial evaluation.

B.     Appellants now propose amendments concerning the extent of financial damages and adding a private nuisance claim.  Even if those amendments were timely, both would be futile, because appellants cannot satisfy the applicable pleading standards.

## ARGUMENT

## I.    APPELLANTS LACK STANDING TO PURSUE, AND FORFEITED, THIS APPEAL

Among the defects in appellants' complaint, two apply uniformly to all of their claims—providing paths for this Court either to dismiss the appeal or summarily to affirm the district court's judgment.  First, the appeal should be dismissed for want of jurisdiction:  appellants lack standing because they seek to vindicate the rights of third parties (their former tenants) and cannot establish third-party standing.  Second, the district court's dismissal of appellants' complaint should be affirmed because appellants failed to object to the magistrate judge's report and recommendation and thereby forfeited the right to further review.

### A.    Appellants Lack Standing

The question of standing involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Kowalski* v. *Tesmer*, 543 U.S. 125, 128 (2004) (citation omitted).  The limitation relevant here is that, "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights

12

or interests of third parties." *Powers* v. *Ohio*, 499 U.S. 400, 410 (1991). There is a "limited . . . exception" to the rule against suing to vindicate the rights of others, which requires "two additional showings." *Kowalski*, 543 U.S. at 130. Specifically, a plaintiff must demonstrate both "a close relation to the injured third party" and "a hindrance to that party's ability to protect its own interests." *Mid-Hudson Catskill Rural Migrant Ministry, Inc.* v. *Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005).

Under those principles, appellants lack standing to pursue their claims. For each claim, appellants assert rights that belong to third parties: namely, their former tenants. But appellants cannot satisfy the stringent requirements to assert third-party standing. While appellees did not challenge standing below, the Court has an "independent obligation to examine . . . standing under arguments not raised below," because "[t]he concept of standing— even its prudential dimension—is a limitation on federal court jurisdiction." *Thompson* v. *County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (emphasis omitted).

1. Appellants do not assert their "own legal rights and interests." *Powers*, 499 U.S. at 410. Rather, their claims are premised on rights that belong, at most, to appellants' former tenants.

a. For their negligence claim, appellants allege that Airbnb misrepresented its alleged status as an unlicensed broker, escrow agent, and lawyer

13

in its terms of service, *see* Supp. App. 10 (¶ 57), and failed to disclose the regulatory risks of renting out rooms for less than 30 days on its platform, *see id.* at 6-7 (¶¶ 29-30, 34). Any such statement or omission would have been between Airbnb and appellants' tenants, not appellants; thus, any duty at most runs to appellants' tenants, whether the claim is negligent misrepresentation or general negligence.

    i.    Appellants' negligence claim alleges that Airbnb made erroneous statements and omissions, and is thus best read as a negligent-misrepresentation claim. *See* p. 27, *infra*; *see also* Supp. App. 44-45; *King* v. *Crossland Savings Bank*, 111 F.3d 251, 254-255 & nn. 1-2 (2d Cir. 1997). The same standard governs claims of negligent misrepresentation and negligent omission. *See High Tides, LLC* v. *DeMichele*, 931 N.Y.S.2d 377, 382 (App. Div. 2011). In order to state either claim, a plaintiff must demonstrate that the defendant had a duty to convey correct information. *See Anschutz Corp.* v. *Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012) (citing, *inter alia*, *Eiseman* v. *State*, 511 N.E.2d 1128 (N.Y. 1987)). Under New York law, a duty to convey correct information exists if the parties are in a "special relationship," which requires "actual privity of contract between the parties or a relationship so close as to approach that of privity." *See id.* (citations omitted). The relationship between an accountant and its client, for example, is sufficient. *See Credit Alliance Corp.* v. *Arthur Andersen & Co.*, 483 N.E.2d 110, 117 (N.Y. 1985).

But the relationship between a lender and a *borrower*'s accountant is not. *See id.* at 119-120.

The facts alleged show at most that Airbnb was in privity of contract with hosts (including appellants' former tenants) and guests. *See, e.g.*, Supp. App. 3 (¶ 14). But no alleged facts demonstrate privity, or anything approaching a special relationship, between Airbnb and *appellants*. Indeed, appellants did not contest their lack of privity with Airbnb when Airbnb raised the issue below. *See id.* at 73-74. As a result, appellants seek, at most, to vindicate a right belonging to their former tenants.

ii. Appellants argue that they are not pursuing a negligent-misrepresentation claim but instead a general negligence claim. *See* Supp. App. 26 (¶¶ 139-141), 72-74. In support of that claim, appellants refer to their allegations that Airbnb "rent[ed] out [their] property without a broker's license or draft[ed] rental agreements or act[ed] as an escrow agent or [went] to court on behalf of [their] interests without a law license or consent," in alleged violation of a "duty to control *its own conduct* within the bounds of the civil and criminal laws and to not commit torts or crimes." *Id.* at 74; *see also* Br. of Appellants 21.

But as the magistrate judge noted, "[a] plaintiff must establish not only that the defendant owed a general duty of care to society as a whole, but also that the defendant owed a *specific* duty to the particular plaintiff." App. 16

15

(quoting *Vega* v. *Fox*, 457 F. Supp. 2d 172, 183 (S.D.N.Y. 2006)); *see also* pp. 30-32, *infra*. At most, however, appellants' complaint alleges facts demonstrating an arm's-length relationship between Airbnb and appellants' former tenants. *See*, *e.g.*, Supp. App. 5 (¶¶ 25-27). That means that any right to pursue a purported negligence claim belongs to appellants' former tenants—not appellants themselves.[2]

b. Appellants' fraud claim is similarly premised on rights that belong to third parties. Appellants alleged that Airbnb committed fraud by "conceal[ing] and misrepresent[ing] its true status as . . . an unlicensed real estate broker, lawyer, and escrow agent." Supp. App. 78; *see also* Br. of Appellants 33-34. Where, as here, a fraud claim is premised on a defendant's concealment of information, the plaintiff must show that the defendant had "a duty to disclose material information." *Dembeck* v. *220 Central Park South, LLC*, 823 N.Y.S.2d 45, 47 (App. Div. 2006). That duty exists "where the parties enjoy a fiduciary relationship" or "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (citation omitted).

---

[2] Regardless of whether appellants raise a negligent-misrepresentation or a general negligence claim, for the reasons explained below, *see* pp. 27-32, *infra*, the absence of a cognizable duty as between Airbnb and appellants independently justifies dismissal for failure to state a claim.

As to the existence of a fiduciary relationship, appellants' complaint at most supports the inference that Airbnb had some kind of relationship with its hosts and guests. *See, e.g.*, Supp. App. 5 (¶¶ 25-27). Any inference that such a relationship was fiduciary would be unwarranted, however, as ordinarily no fiduciary relationship exists between parties to an arm's-length agreement. *See Oddo Asset Management* v. *Barclays Bank PLC*, 973 N.E.2d 735, 740-741 (N.Y. 2012). Regardless, the complaint does not support an inference that any relationship existed between appellants and Airbnb. The complaint contains no allegations demonstrating that appellants and Airbnb communicated or interacted at all, let alone to a degree demonstrating a fiduciary relationship.

And as to superior knowledge, appellants' theory of fraud is that Airbnb failed to disclose in its terms of service its alleged status as a real-estate broker, lawyer, and escrow agent. On that theory, however, only appellants' tenants could have acted on the basis of any such mistaken knowledge. Again, the right to pursue a claim concerning Airbnb's alleged fraudulent misrepresentations belongs to appellants' former tenants, not appellants.

c. Finally on this point, appellants do not have a right to assert a consumer-deception claim under Section 349, because they allege only injuries deriving from harms to third parties. Only consumers who are themselves harmed by the challenged deceptive trade practice possess a right to bring a Section 349 claim; "derivative actions are barred" under Section 349. *City of*

*New York* v. *Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009); *see also Frintzilas* v. *DirecTV, LLC*, 731 Fed. Appx. 71, 72 (2d Cir. 2018). Thus, where an injury is "purely contingent on harm to third parties," a plaintiff may not assert a Section 349 claim. *Smokes-Spirits*, 911 N.E.2d at 839 (citation omitted).

Appellants claim to have incurred injuries arising from "the imposition of numerous fines and penalties" by New York City. Supp. App. 28 (¶ 151). But as appellants' complaint explains, those injuries derive from harms to appellants' former tenants who served as Airbnb hosts. According to appellants, Airbnb "misrepresent[ed] to its [m]embers"—appellants' former tenants— "the true character and quality of its legal status, rights and obligations," leading the tenants to list their apartments on Airbnb's platform in violation of local law. *Id.* at 10 (¶ 57); *see id.* at 78. Thus, the real right appellants seek to vindicate is the right of their former tenants to pursue claims concerning Airbnb's allegedly deceptive consumer conduct.[3]

2. Because appellants are asserting rights that, at most, belong to their former tenants, appellants effectively seek to bring claims on behalf of those tenants. As a result, appellants must demonstrate that they have third-party standing. *See Department of Labor* v. *Triplett*, 494 U.S. 715, 720 (1990).

---

[3] The lack of a direct injury also means the district court correctly dismissed appellants' Section 349 claim under Rule 12(b)(6). *See* pp. 36-39, *infra*.

As noted above, in order to establish third-party standing, appellants must show that they have a "close relationship" with their former tenants and that their former tenants had a hindered ability to seek their own relief for the challenged conduct. *See Mid-Hudson Catskill*, 418 F.3d at 174. Appellants have not made either showing.

a.      Appellants lack the requisite close relationship with their tenants to assert any of their claims on their behalf. "A close relation[ship] supporting third-party standing exists when 'the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter.'" *Fenstermaker* v. *Obama*, 354 Fed. Appx. 452, 455 (2d Cir. 2009) (quoting *Singleton* v. *Wulff*, 428 U.S. 106, 115 (1976)).

The Supreme Court has recognized only certain specific types of "close relationships" that support third-party standing, including trustees as to their trusts; guardians ad litem as to their wards; receivers as to their receiverships; bankruptcy assignees as to their bankruptcy estates; and executors as to their testator estates. *W.R. Huff Asset Management Co.* v. *Deloitte & Touche LLP*, 549 F.3d 100, 109-110 (2d Cir. 2008) (quoting *Sprint Communications Co., L.P.* v. *APCC Services, Inc.*, 554 U.S. 269, 288-289 (2008)). Accordingly, courts tend to find a "close relationship" where the interests of the plaintiff and the third party align, such that the former is incentivized "effectively [to] represent" the latter. *New York State Citizens' Coalition for Children* v. *Poole*, 922

19

F.3d 69, 76 (2d Cir. 2019).  In line with that understanding, this Court has de-
termined that a coalition representing foster parents had established a close
relationship sufficient to assert third-party standing on behalf of the foster
parents, "not least because those foster parents ha[d] authorized the [c]oali-
tion to file suit on their behalf."  *Id.* at 75.

This Court has hesitated, however, to declare new "close relationships"
beyond the core categories recognized by the Supreme Court.  *See W.R. Huff*,
549 F.3d at 110 (rejecting third-party standing premised on an "investment
advisor-client relationship").  The Supreme Court has never recognized a
"landlord-tenant" exception to the general rule against third-party standing,
and at least one federal court of appeals has rejected such an exception.  *See
Rozman* v. *City of Columbia Heights*, 268 F.3d 588, 591 (8th Cir. 2001).

This case, moreover, would be a singularly poor candidate for recogniz-
ing such an exception, because no "close relationship" exists here between ap-
pellants and their former tenants.  The facts alleged in the complaint demon-
strate that appellants' interests are not only misaligned with those of their for-
mer tenants, but diametrically opposed.  In their complaint, appellants repeat-
edly assert that their former tenants colluded with Airbnb to engage in decep-
tive and fraudulent conduct.  *See* Supp. App. 3-4, 21, 27 (¶¶ 14-17, 127, 149); *see
also* Br. of Appellants 24.  In addition, appellants all but accuse their former
tenants of recalcitrance:  they note that, after four inspections by the City,

20

appellants were so desperate to stop more fines from being imposed that they "removed all of the occupants from [their] building" and have "kept it vacant" since. Supp. App. 4 (¶ 20). Such adversity makes it exceedingly unlikely that appellants would serve as "effective proponents" of their former tenants' rights. *Singleton*, 428 U.S. at 115.

b.    Even if appellants could show the requisite close relationship, they cannot show that their former tenants are "hindered" in their ability to seek relief themselves. The "hindrance" requirement can be satisfied by a "practical disincentive to sue," such as "a desire for anonymity or the fear of reprisal." *Poole*, 922 F.3d at 75. If the "third party is unidentifiable, lacks sufficient interest, or will suffer some sanction" by bringing suit on its own behalf, a court will find sufficient "hindrance" to permit third-party standing. *Mental Hygiene Legal Service* v. *Cuomo*, 13 F. Supp. 3d 289, 301 (S.D.N.Y. 2014) (citation omitted), *aff'd*, 609 Fed. Appx. 693 (2d Cir. 2015).

Appellants' complaint does not allege facts supporting the inference that their former tenants have a "practical disincentive to sue." Appellants' complaint refers to one of those former tenants by name, *see* Supp. App. 3 (¶ 14), and alleges no facts demonstrating that the other tenants have a desire or good reason to maintain anonymity. Appellants' former tenants also have an interest in litigating any potential claims against Airbnb, to the extent Airbnb's conduct allegedly led them to be "removed" from appellants' building in 2017.

*See id.* at 4 (¶ 20).  Finally, the former tenants face no fear of reprisal or sanction for initiating a lawsuit.  This case is thus miles away from a case such as *Poole*, where this Court permitted an organization representing foster parents to bring suit on behalf of the parents, in part because the parents "feared retaliation" as "a state agency had previously retaliated against them after they had lodged a complaint against it."  922 F.3d at 76.  Based on the complaint here, however, appellants' former tenants face no such fear and are thus not "hindered" in their ability to bring suit themselves.

In sum, appellants are asserting only the rights of their former tenants, yet they lack the necessary special relationship with their former tenants to assert third-party standing, and appellants' former tenants face no hindrance to vindicating their own rights.  Because appellants cannot establish third-party standing, this appeal should be dismissed for want of jurisdiction.

## B.  Appellants Failed To Object To The Report And Recommendation And Thus Forfeited Further Review

The magistrate judge issued the report and recommendation on September 29, 2023.  *See* App. 1.  The parties had 14 calendar days to file objections to the report and recommendation, *see* Fed. R. Civ. P. 72(b), and appellants did not object within that window.  The district court did not abuse its discretion in denying, for failure to demonstrate excusable neglect, appellants' belated request for an extension of time to file objections.  And the interests of justice do not support excusing that forfeiture here.

22

1.      Appellants filed no objections to the report and recommendation before the window to do so closed on October 13, 2023.  Instead, after the deadline for objecting passed (on October 23), appellants filed a letter motion stating that they had "well-founded objections to parts" of the report and recommendation, and requesting a "stay" and extension of time to file objections because "an ethical conflict of interest" had arisen between appellants and their counsel.  App. 30-31.  Appellants included no further detail identifying the objectionable parts of the report and recommendation; the nature of the objections; or the nature of the ethical conflict.  After an ex parte hearing, the district court denied relief because appellants had "not explained why any attorney-client dispute prevented them from objecting within the statutory fourteen-day period."  App. 55.

By failing timely to object to the magistrate judge's report and recommendation, appellants forfeited the right to challenge that order on appeal. *See Spence* v. *Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 174 (2d Cir. 2000).

Nor did the district court abuse its discretion by denying appellants' extension motion.  *See Wesolek* v. *Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988).  A district court abuses its discretion when it applies the wrong legal rule; relies on a "clearly erroneous factual finding"; or makes a ruling that "cannot be located within the range of permissible decisions." *Zervos* v. *Verizon New York,*

*Inc.*, 252 F.3d 163, 169 (2d Cir. 2001). None of those circumstances applies here.

To begin with, the district court correctly identified the applicable legal rule. If a party moves to extend the deadline to object to a report and recommendation after that deadline has passed, the party is required to show that "the fail[ure] to act" was the result of "excusable neglect." Fed. R. Civ. P. 6(b); *see, e.g.*, *Wesolek*, 838 F.2d at 58. In evaluating excusable neglect, courts consider a variety of non-exclusive factors, including, most relevantly, "whether [the delay] was within the reasonable control of the movant." *Alexander* v. *Saul*, 5 F.4th 139, 142 (2d Cir. 2021) (citation omitted).

The district court correctly identified and applied the excusable-neglect standard, determining that the delay was solely within appellants' control and thus not excusable. *See* App. 55. The court reasoned that, even assuming the existence of a conflict of interest, appellants had not explained why the conflict prevented counsel from filing a timely extension request. *See id.*

The district court's analysis was eminently reasonable in light of the information (or lack thereof) that appellants had provided. Nothing in the record indicates that the court's conclusion was premised on a clearly erroneous factual understanding. Nor was the district court's application of the excusable-neglect standard outside the "range of permissible decisions." *Zervos*, 252

F.3d at 169.  The court thus did not abuse its discretion in denying appellants'
extension request.

2.     While this Court may excuse the failure to object to a magistrate
judge's report and recommendation in the "interests of justice," *Thomas* v.
*Arn*, 474 U.S. 140, 155 (1985), the interests of justice do not warrant excusing
appellants' neglect here.  This Court considers "whether the defaulted argu-
ment has substantial merit, or put otherwise, whether the magistrate judge
committed plain error in ruling against the defaulting party."  *Spence*, 219
F.3d at 174.

Appellants contend that the interests of justice warrant excusing their
forfeiture because the district court failed to give due weight to their attor-
ney's "unresolved conflict of interest."  Br. of Appellants 40.  That argument
is misleading and in any event irrelevant.

As a threshold matter, the district court did consider the purported con-
flict: it held an ex parte hearing to investigate the situation.  On that basis, the
court determined that no conflict could explain appellants' failure to seek an
extension of the deadline.  Accordingly, the "Hobson's choice" appellants de-
scribe (at 49)—between filing objections to a report and recommendation
while the conflict still existed, on the one hand, or declining to do so and for-
feiting further review, on the other—is a false one.  The asserted conflict thus

25

provides no reason for this Court to intervene in the interests of equity and review the magistrate judge's rulings on the merits.

More importantly, appellants entirely ignore the applicable legal standard in these circumstances, which is whether the magistrate judge's conclusions on the merits were plainly erroneous. *See Spence*, 219 F.3d at 174. The plain-error exception "should only be invoked with extreme caution in the civil context." *Pescatore* v. *Pan American World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir. 1996) (citation omitted). It is triggered only where an error is "so serious and flagrant" that it "goes to the very integrity" of the underlying proceeding. *Modave* v. *Long Island Jewish Medical Center*, 501 F.2d 1065, 1072 (2d Cir. 1974). For the reasons explained below, *see* pp. 48-50, *infra*, the magistrate judge did not err, let alone flagrantly err, by recommending dismissal and denial of leave to amend. Nor does the magistrate judge's report and recommendation reflect a lack of fairness or integrity in judicial proceedings. Consequently, the interests of justice do not support excusing appellants' forfeiture of further review of the report and recommendation. The judgment of the district court should be affirmed on that basis.

## II. THE DISTRICT COURT PROPERLY DISMISSED THE ACTION FOR FAILURE TO STATE A CLAIM

The district court correctly concluded that appellants had failed to state a valid claim. This Court reviews the district court's decision to grant a motion to dismiss for failure to state a claim de novo. *See, e.g.*, *Anschutz Corp.*, 690

F.3d at 107.  Here, the pleadings failed to contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and dismissal was therefore warranted.  *Id.* (internal quotation marks and citations omitted).

### A.  Appellants Failed To State A Negligent-Misrepresentation Or General Negligence Claim

The complaint did not state a claim for either negligent misrepresentation or general negligence, because the alleged facts did not demonstrate that Airbnb owed appellants either a duty to give correct information or a duty of reasonable care.  However the claim is framed, it was properly dismissed.

1.     As noted above, *see* pp. 14-15, the claim at issue is best viewed as a negligent-misrepresentation claim.  Appellants seek to hold Airbnb liable in negligence for allegedly mispresenting Airbnb's purported status as a real-estate broker, escrow agent, and lawyer in its terms of service.  *See*, *e.g.*, Supp. App. 10 (¶ 57).  Appellants also seek to hold Airbnb liable for failing to disclose appellants' former tenants' plans to use Airbnb to rent apartments, as well as the attendant legal risks.  *See id.* at 6-7 (¶¶ 29-30, 34).  This Court assesses purportedly erroneous statements and omissions under the rubric of negligent misrepresentation.  *See*, *e.g.*, *King*, 111 F.3d at 254-255 & nn.1-2.

a.     To state a claim for negligent misrepresentation under New York law, appellants must allege, among other elements, that Airbnb had "a duty, as a result of a special relationship, to give correct information."  *Anschutz*

27

*Corp.*, 690 F.3d at 114 (citation omitted). New York strictly limits a special relationship to "actual privity of contract between the parties or a relationship so close as to approach that of privity." *Id.* (citation omitted). And relationships so close as to approach that of privity are "narrowly defined." *Williams & Sons Erectors, Inc.* v. *South Carolina Steel Corp.*, 983 F.2d 1176, 1182 (2d Cir. 1993) (citation omitted). Such a relationship exists only when "the defendant makes a statement with the awareness that the statement was to be used for a particular purpose"; "a known party or parties rely on this statement in furtherance of that purpose"; and "there is some conduct by the defendant linking it to the party or parties and evincing defendant's understanding of their reliance." *Aetna Casualty & Surety Co.* v. *Aneiro Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005). Accordingly, a special relationship cannot exist between a defendant and a "faceless o[r] unresolved class o[f] persons." *Id.* (citation omitted).

b.    Appellants claim no actual privity of contract or relationship approaching privity. *See* Supp. App. 73-74. In fact, the alleged facts demonstrate no relationship between Airbnb and appellants at all. Rather, they reflect only that Airbnb contracted with *appellants' former tenants*. *See id.* at 8-9 (¶¶ 43-46, 49). And no privity-like relationship between Airbnb and appellants otherwise arose. As to the first element that this Court articulated in *Aetna*, none

of the alleged facts demonstrates that Airbnb was aware that its terms of service would be used for any particular purpose with respect to appellants. *See Aetna*, 404 F.3d at 584.

As to the second and third elements articulated in *Aetna*, the complaint alleges no facts demonstrating that Airbnb knew that appellants would rely on the terms of service for any particular purpose, or that Airbnb even knew who appellants were. *See Aetna*, 404 F.3d at 584. Nor can such facts be inferred, given that appellants simultaneously claim that they were unaware their tenants would be using Airbnb at all. *See* Supp. App. 6-7 (¶ 34).

Moreover, the allegations do not implicate the sort of conduct that can demonstrate knowledge of reliance under this Court's precedents. For instance, the complaint does not allege any "word[s] or action" by Airbnb that was "directed to" appellants. *See Stapleton* v. *Barrett Crane Design & Engineering*, 725 Fed. Appx. 28, 31 (2d Cir. 2018). Nor does it allege any sort of meeting between Airbnb and appellants. *See Bayerische Landesbank* v. *Aladdin Capital Management LLC*, 692 F.3d 42, 60 (2d Cir. 2012).

Instead, the alleged facts demonstrate that any purported misrepresentation or omission in Airbnb's terms of service was directed generally at an indeterminate class of tenants. And where a purported misrepresentation or omission was directed at a "faceless o[r] unresolved class o[f] persons," no duty to give correct information can arise. *Aetna*, 404 F.3d at 584 (citation omitted);

*see also Ultramares Corp.* v. *Touche*, 174 N.E. 441, 446 (N.Y. 1931). Because the alleged facts do not demonstrate that Airbnb owed appellants such a duty, appellants have not stated a claim for negligent misrepresentation under New York law.

2. Even if assessed under the rubric of general negligence, appellants' claim is invalid. In appellants' view, Airbnb negligently "use[d] its broker services on hundreds of occasions to sublease [appellants'] apartment building for less than 30 days in violation of [New York City] laws and without any broker's license." Br. of Appellants 21; *see also* Supp. App. 73-74.

a. To state a claim for negligence, appellants must allege, among other elements, that Airbnb owed a duty of reasonable care. *See Ferreira* v. *City of Binghamton*, 975 F.3d 255, 266, 268 (2d Cir. 2020). Once again, that duty must be owed "to the plaintiff by the defendant"; it cannot be an amorphous, free-floating duty to society. *Pasternack* v. *Laboratory Corp. of America Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (internal quotation marks and citation omitted); *see, e.g.*, *McCarthy* v. *Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997). According to appellants, Airbnb has the duty to "control *its own conduct* within the bounds of the civil and criminal laws." Supp. App. 74. But that is not a specific duty flowing from Airbnb to appellants. And because Airbnb violated no duty to appellants, their negligence claim was properly dismissed.

b.     To the extent appellants contend (at 21) that Airbnb's purported violation of local law by "subleas[ing] [appellants'] apartment building for less than 30 days" constitutes negligence per se—a separate basis for relief not identified in the complaint—appellants cannot state that claim either.  The violation of a municipal law does not give rise to negligence per se.  *See*, *e.g.*, *Elliott* v. *City of New York*, 747 N.E.2d 760, 762 (N.Y. 2001).  And appellants claim only violations of New York City laws or regulations.  *See* Br. of Appellants 21 (claiming that, "[u]nder NYC administrative code § 27-2004, Multiple Dwelling Law Section 4(8) and/or NYC Building Code Section 28.310, Airbnb's brokering of [appellants'] NYC building for less than 30 days did violate New York City law").

c.     To the extent appellants now assert that Airbnb had the duty to control the conduct of appellants' former tenants, they took the opposite position before the district court and should be deemed to have forfeited such an argument.  *See* Supp. App. 74.  And regardless, appellants cannot state a negligence claim on a duty-to-control theory here.  New York courts decline to impose a duty of care where "the realities of every day experience show us that . . . there is little expectation that the one made responsible could prevent the . . . conduct" of the other.  *Pulka* v. *Edelman*, 358 N.E.2d 1019, 1022

(N.Y. 1976). To impose a duty of care in such cases would likely force the defendant "off the market due to the threat of limitless liability." *McCarthy*, 119 F.3d at 157.

And it would be unreasonable to expect that Airbnb could "prevent the conduct" of appellants' former tenants here. Those tenants—not Airbnb—create listings on Airbnb's platform and manage the units that they list. *See* Supp. App. 125. Moreover, appellants have not alleged that any special relationship exists between Airbnb and appellants' former tenants, such that Airbnb could control their conduct. *See, e.g.*, *Kazanoff* v. *United States*, 945 F.2d 32, 36 (2d Cir. 1991) (identifying examples of such special relationships). Because "there is little expectation" that Airbnb could prevent the conduct of appellants' tenants, *Pulka*, 358 N.E.2d at 1022, no duty to control those tenants arises.

*    *    *    *    *

Because appellants did not allege that Airbnb owed the requisite duty either for negligent misrepresentation or general negligence, appellants failed to state a claim. The district court's dismissal of the negligence claim should therefore be upheld.

## B. Appellants Failed To State A Fraud Claim

Appellants claim that Airbnb fraudulently misrepresented its legal status. As alleged in the complaint, Airbnb stated in its terms of service that it is

not a real-estate broker, escrow agent, or lawyer under New York law.  Appellants allege that Airbnb nonetheless acted in those capacities and failed to uphold the ethical obligations associated with those roles.  *See* Supp. App. 2-3, 21-22 (¶¶ 7-13, 127-128); *see also* Br. of Appellants 34.  Appellants then purportedly "justifiably relied upon Airbnb's false representations . . . when leasing its apartment units to tenants who [also] failed to disclose and affirmatively concealed that they were actually Airbnb [h]osts who planned to use such apartments for Airbnb rentals."  Supp App. 27 (¶ 149).

To recover for fraud under New York law, appellants must allege a "material misrepresentation or omission of a fact"; "knowledge of that fact's falsity"; an "intent to induce reliance"; "justifiable reliance by the plaintiff"; and damages.  *Bai* v. *Tegs Management, LLC*, No. 22-681, 2023 WL 6458542, at *1 (2d Cir. Oct. 4, 2023) (quoting *Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*, 797 F.3d 160, 170 (2d Cir. 2015)).  Appellants failed to allege facts demonstrating at least two of those necessary elements:  intent to induce and justifiable reliance.  The complaint thus does not state a claim for fraud.[4]

---

[4] If appellants' claim is framed as a claim for fraudulent omission (or concealment), appellants must also demonstrate that Airbnb had a duty to disclose material information. *See Loreley Financing (Jersey) No. 3 Ltd.* v. *Wells Fargo Securities, LLC*, 13 F.4th 247, 263 (2d Cir. 2021).  Any claim for fraudulent omission (or concealment) would fail on that additional ground.  *See* p. 16, *supra*.

1.    Appellants failed to allege facts demonstrating Airbnb's intent to induce reliance. A representation, "even [if] knowingly false," must be "made with the intent to be communicated to the persons or class of persons who act upon it to their prejudice." *United States ex rel. O'Donnell* v. *Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016) (quoting *Ultramares*, 174 N.E. at 447). That intent must be "contemporaneous" with the representation itself. *See O'Donnell*, 822 F.3d at 658. The complaint alleges that Airbnb "misrepresent[ed] to its [m]embers [appellants' *tenants*] the true character and quality of its legal status, rights and obligations within its extensive agreements including its [terms of service]." Supp. App. 10 (¶ 57). But the complaint alleges no facts demonstrating that, while drafting or invoking its terms of service, Airbnb intended any statements concerning its legal status to be further "communicated to" *appellants*. *O'Donnell*, 822 F.3d at 659 (citation omitted). Because the complaint alleges no facts demonstrating Airbnb's intent to induce reliance, their fraud claim was correctly dismissed.

2.    For a similar reason, appellants failed to allege that they justifiably relied on Airbnb's purported misrepresentation of its status when entering into leases with tenants. *See* Supp. App. 21 (¶ 127). Plaintiffs "cannot claim reliance on alleged misrepresentations of which [they were] unaware." *Filler* v. *Hanvit Bank*, 156 Fed. Appx. 413, 416 (2d Cir. 2005) (citing *Securities Investor Protection Corp.* v. *BDO Seidman, L.L.P.*, 746 N.E.2d 1042, 1047 (N.Y.

2001)).  Thus, misrepresentations that were "not communicated to [plaintiffs]" "cannot form the basis of [their] reasonable reliance." *Loreley*, 13 F.4th at 260. What is more, plaintiffs may reasonably rely on indirect communications, conveyed through a third party, only if the third party "acted as a mere conduit in passing on the misrepresentations" to them.  *Id.*; *see also Eaton, Cole & Burnham Co.* v. *Avery*, 83 N.Y. 31, 34-35 (1880).

The alleged facts do not demonstrate that appellants were aware of the purported misrepresentation in Airbnb's terms of service—nor could they, given that appellants claim they were unaware that their tenants intended to list apartments on Airbnb at all.  *See*, *e.g.*, Supp. App. 6-7 (¶ 34).  Moreover, appellants allege no facts demonstrating that Airbnb communicated anything, let alone the asserted misrepresentations, to them.  Instead, the alleged facts show that Airbnb communicated the allegedly misleading terms of service to *appellants' tenants*.  *See*, *e.g.*, *id.* at 10 (¶ 57).  Appellants could not have reasonably relied upon alleged misrepresentations that did not reach *them*, *see Loreley*, 13 F.4th at 260, and that they did not know about, *see Filler*, 156 Fed. Appx. at 416.  And appellants alleged no facts demonstrating that Airbnb provided false information about its status to appellants' former tenants with the intent that those tenants would convey that information to appellants.  *See Loreley*, 13 F.4th at 260.  The district court's dismissal of appellants' fraud claim

can be upheld based on the absence of justifiable reliance, as well as the absence of an intent to induce.

## C. Appellants Failed To State A Claim Under Section 349 Of New York's General Business Law

Finally, appellants failed to state a claim under Section 349 of New York's General Business Law because they failed to allege facts demonstrating the required elements of materiality and injury. In particular, appellants asserted that Airbnb "publicly, falsely, and categorically den[ied] and misrepresent[ed] the true status of its unlicensed and unlawful rental conduct," which "constitute[d] unlawful trade practices." Supp. App. 85; *see also id.* at 26-27 (¶ 144).

To state a claim under Section 349, appellants must establish that Airbnb's "act or practice was consumer-oriented"; the "act or practice was misleading in a material respect"; and appellants "we[re] injured as a result." *Spagnola* v. *Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (internal quotation marks and citation omitted). Appellants' failure to allege facts supporting at least the latter two elements requires dismissal of the claim.

1. The complaint fails to allege facts demonstrating that Airbnb misled consumers about its alleged status as a real-estate broker, escrow agent, or lawyer. *See* Supp. App. 10 (¶ 57). In addition, the complaint fails to state a Section 349 claim for the independent reason that appellants have not shown that any such statement was *materially* misleading. A materially misleading

36

statement "has the potential to affect the decision-making process of the least sophisticated consumer." *Luci* v. *Overton, Russell, Doerr & Donovan, LLP*, 789 Fed. Appx. 895, 897 (2d Cir. 2019) (quoting *Cohen* v. *Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 85 (2d Cir. 2018)).

Appellants failed to allege facts showing that Airbnb's statement could have affected any decision by consumers. Specifically, appellants did not allege that appellants' former tenants may have made a different decision with regard to using Airbnb's platform if Airbnb had disclosed its alleged status as a real-estate broker, escrow agent, or lawyer. Because appellants thus did not allege that Airbnb's statement was "misleading in a material way," their Section 349 claim should be dismissed. *See Luci*, 789 Fed. Appx. at 898.

2. The Section 349 claim against Airbnb also fails because appellants have not adequately pleaded injury.

a. As alleged in the complaint, appellants were injured by New York City's "imposition of numerous fines and penalties" for violations of local law. Supp. App. 28 (¶ 151). A Section 349 "plaintiff . . . must show that the defendant's 'material deceptive act' caused the injury." *Stutman* v. *Chemical Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) (citation omitted). For example, in *Bibicheff* v. *PayPal, Inc.*, 844 Fed. Appx. 394 (2021), this Court dismissed a plaintiff's Section 349 claim because the plaintiff's injury was caused by her office manager's access to her personal and business information (which the

office manager used to defraud the plaintiff), rather than by the defendant or any deceptive act on its part. *See id.* at 397.

Materiality aside, appellants have not alleged facts demonstrating that statements by Airbnb caused New York City's regulators, *first*, to inspect appellants' building, and *second*, to fine appellants for violating local laws. Appellants failed to allege that Airbnb's statements caused appellants to enter into leases with their former tenants, or caused the former tenants subsequently to violate local law; in fact, appellants did not allege they were even aware of Airbnb's representations about its status before entering into those leases. Curiously, appellants themselves seem to recognize, at least with respect to the statute of limitations, that it "makes no sense" to argue that "the Airbnb hosts' listing of the apartment[s] with Airbnb and/or their receipt of its [t]erms of service caused any injury to [appellants]." Br. of Appellants 32. Because the alleged facts do not demonstrate that appellants' fines were caused by Airbnb's purported deceptive act, appellants fail to state a Section 349 claim.

b.      Appellants also fail to allege a cognizable injury. For a Section 349 claim, "a plaintiff must prove 'actual' injury." *Stutman*, 731 N.E.2d at 612 (citation omitted). A consumer's mere purchase of a product that they would not have purchased absent the deception is not a cognizable Section 349 injury. *See Small* v. *Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999). Instead,

a plaintiff must demonstrate that, "on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander* v. *Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). That might include, for example, a plaintiff purchasing a product at an inflated cost. *See Small*, 720 N.E.2d at 898.

Appellants' entering into leases that theoretically they might not have, absent Airbnb's purported deception, is not an injury cognizable under Section 349. *See Small*, 720 N.E.2d at 898. At a minimum, appellants would need further allegations: for example, that the price of the leases they entered into was affected by the alleged deception. Appellants' Section 349 claim was thus properly dismissed for failure adequately to plead injury, as well as materiality.

## III. THIS COURT SHOULD AFFIRM DISMISSAL BECAUSE ALL CLAIMS ARE UNTIMELY

This Court reviews de novo the district court's decision to dismiss based on the statute of limitations. *See, e.g., Ajdler* v. *Province of Mendoza*, 890 F.3d 95, 99 (2d Cir. 2018). The district court correctly concluded that appellants' fraud and Section 349 claims are untimely under the applicable limitations periods. Further, this Court should affirm dismissal on the ground that appellants' remaining negligence claims are likewise untimely.

A claim "accrues" for limitations purposes when "the plaintiff has a complete and present cause of action." *Levin* v. *Sarah Lawrence College*, 747 F.

Supp. 3d 645, 670 (S.D.N.Y. 2024) (citations omitted). "With respect to tort claims, accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." *City Store Gates Manufacturing Corp.* v. *Empire Rolling Steel Gates Corp.*, 979 N.Y.S.2d 606, 607 (App. Div. 2014) (internal quotation marks and citations omitted). Because injury is typically the final element to occur, tort claims generally "accrue upon an injury being sustained." *Id.*

Notably, an injury that corresponds to a financial loss does not necessarily occur, for accrual purposes, at the time of that financial loss. Instead, a plaintiff is "injured" when any harm flowing from the defendant's tortious conduct becomes concrete—that is, when the plaintiff is negatively affected by the defendant's actions. For example, in the case of assault, the first-in-time injury is physical, which marks accrual of the claim, even if financial injury in the form of medical bills occurs later.

## A.  Appellants' Negligent-Misrepresentation And Fraud Claims Are Untimely

As discussed above, appellants' negligence claim is best understood as one of negligent misrepresentation, which is analytically similar to fraud. *See* pp. 14, 27, *supra*. In their negligence and fraud claims, appellants focus primarily on two alleged misstatements by Airbnb: *first*, that "Airbnb misrepresent[ed]" in its terms of service "the true character and quality of its legal status, rights and obligations," Supp. App. 10 (¶ 57), and *second*, that Airbnb

40

failed to disclose the legal risks created by appellants' former tenants having listed their apartments, *see id.* at 6-7 (¶¶ 29-30, 34). Those claims are time-barred.

Fraud claims, and negligent-misrepresentation claims involving allegations of fraud, must be brought within six years of accrual or two years of discovery, whichever is later. *See* N.Y. C.P.L.R. § 213(8); *Santiago* v. *1370 Broadway Associates, L.P.*, 749 N.E.2d 168, 169 (N.Y. 2001). A claim arising from a defendant's misrepresentation (or omission) accrues "on the date of the alleged misrepresentation which is relied upon by the plaintiff," because it is then that the plaintiff is negatively affected by the misstatement. *Fandy Corp.* v. *Lung-Fong Chen*, 691 N.Y.S.2d 572, 573 (App. Div. 1999); *see also A.H.A. General Construction, Inc.* v. *Edelman Partnership*, 737 N.Y.S.2d 85, 87 (App. Div. 2002).

1. To the extent appellants' theory of negligence turns on Airbnb's alleged misrepresentations in its terms of service, their claim is time-barred because the "misrepresentation" would have occurred the first time one of appellants' former tenants read Airbnb's terms of service and, relying on them, elected to list their apartment on the Airbnb platform. And the latest any such reliance could have occurred was the day before the first New York City raid on August 29, 2014—which is over six years before appellants filed their complaint on September 23, 2020. The discovery rule does not help appellants,

41

because they would have been on notice of Airbnb's alleged misrepresentations as soon as New York City raided their property for the first time—again, on August 29, 2014, more than two years before they filed their complaint.

2.     To the extent appellants' theory of negligence turns on Airbnb's failure to disclose the legal risks associated with appellants' former tenants listing their apartments on the Airbnb platform, their claim is similarly time-barred.  On that theory, appellants' negligent-misrepresentation claim accrued, at latest, the first time appellants entered into a lease with a tenant who listed their apartment on the Airbnb platform.  But again, appellants necessarily executed that lease at least one day before the first New York City raid on August 29, 2014—more than six years before appellants filed their complaint.  And again, the discovery rule is of no help to appellants, because they would have been on notice of Airbnb's failure to disclose as soon as the City raided the property for the first time.

3.     As the district court correctly held, appellants' fraud claim is untimely for the same reasons. *See* App. 58.  The alleged fraud occurred the first time that appellants "executed a lease with a tenant for an apartment" and the tenant had an Airbnb account.  App. 13.  As just discussed, appellants necessarily executed that lease before the City imposed its first fine on August 29, 2014.  So any fraudulent conduct took place earlier than six years before appellants filed their complaint on September 21, 2020.  And the discovery rule

42

is again of no help to appellants, because they would have been on notice of the fraud as soon as the City first inspected the property.

## B. Any General Negligence Claim Is Untimely

Again, appellants' negligence claim is best understood in terms of negligent misrepresentation. *See* pp. 14, 27, *supra*. For purposes of the limitations period, the district court accepted appellants' characterization of the claim as one of general negligence. *See* App. 56. Should this Court do the same, appellants' claim remains time-barred.

1. Any claim sounding in negligence must be brought within three years of accrual. *See* N.Y. C.P.L.R. § 214(4); *Nothnagle Home Securities Corp.* v. *Bruckner, Tillet, Rossi, Cahill & Associates*, 3 N.Y.S.3d 870, 871 (App. Div. 2015). A negligence claim accrues "the day an actionable injury occurs." *McCoy* v. *Feinman*, 785 N.E.2d 714, 718 (N.Y. 2002). Appellants' theory of negligence turns on Airbnb "using its broker services . . . to sublease [appellants'] apartment building" in violation of local law. Br. of Appellants 21; *see also* Supp. App. 73-74. On that theory, the negligence claim would have accrued (as appellants would have been first injured), at the moment Airbnb purportedly brokered the unlawful rental, i.e., the moment a former tenant transacted with a guest to sublease an apartment for less than 30 days. The latest any such accrual could have occurred was one day before September 22, 2017—the date of the last New York City inspection of appellants' property.

Because appellants filed their complaint more than three years after that date, any general negligence claim they assert is untimely.

To be sure, the district judge and the magistrate judge accepted, for purposes of analyzing timeliness, appellants' argument that their negligence claim accrued when New York City imposed fines. The better view is that accrual occurred when the alleged negligence would have first injured appellants, in the form of appellants' former tenants transacting with guests on Airbnb's platform. Should this Court disagree, however, the only arguably timely portion of appellants' negligence claim corresponds to the $20,200 in damages arising from the final inspection on September 21, 2017. *See* App. 9.

Appellants contend that the portion of their claim seeking damages for the $57,000 fine imposed as a result of New York City's third raid on March 7, 2017, is timely. As they see it, the fine was not "imposed" until the Environmental Control Board sustained the notice of violation issued by the officials who raided the building—here, Department of Buildings personnel within the Office of Special Enforcement—which they contend occurred within three years of the filing of the complaint. *See* Br. of Appellants 17-18. That is incorrect. The Board has the power only to uphold or dismiss a notice; it is the agency charged with inspecting the property—here, the Department—that issues the notice (and hence imposes the fine) in the first instance. *See* Br. for Respondent at 10-12, *Lilakos* v. *Environmental Control Board*, 48 N.Y.S.3d

775 (App. Div. 2017) (explaining allocation of authority); *see also Madison Avenue I LLC* v. *Marecheau*, 131 N.Y.S.3d 544, 544 (App. Div. 2020). For accrual purposes, therefore, the dates the notices were issued—the dates the Department inspected appellants' building—are the dates the fines were "imposed."

3.     Appellants further suggest (Br. 15-16) that the continuing-violation doctrine permits them to pursue any untimely portions of their negligence claim. The district court correctly rejected that argument. That doctrine is an exception to the general principle that "a cause of action accrues when the wrong is done"; it provides that "certain wrongs are considered to be continuous wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act." *Neufeld* v. *Neufeld*, 910 F. Supp. 977, 982 (S.D.N.Y. 1996) (citations omitted). The doctrine is "disfavored" in the Second Circuit and applicable "only under the most compelling circumstances." *Petrosky* v. *New York State Department of Motor Vehicles*, 72 F. Supp. 2d 39, 48 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).

Appellants argue that the continuing-violation doctrine applies because Airbnb engaged in a pattern of "unlawful rental conduct." Br. of Appellants 15-16. But as the district court observed, appellants themselves describe why that doctrine does not govern here, having argued that "each of the[] four distinct OSE raids involved distinct facts involving different Airbnb [m]embers, separate Airbnb rental agreements, and distinct [s]ummons." Supp. App. 92;

*see also* App. 57.  In appellants' own words, Airbnb "did not perform its torts upon [them] within a 'single breach.'"  Supp. App. 93.  The continuing-violation doctrine thus does not apply, and appellants' negligence claims are untimely.

## C.    Appellants' Section 349 Claim Is Untimely

A claim alleging deceptive business practices under Section 349 must be brought within three years of accrual.  *See* N.Y. C.P.L.R. § 214(5); *Michelo* v. *National Collegiate Student Loan Trust 2007-2*, 419 F. Supp. 3d 668, 699 (S.D.N.Y. 2019).  A Section 349 claim accrues when the consumer transacts to purchase the product or service at issue, because it is at that moment that the consumer is deceived (and thus injured).  *See*, *e.g.*, *Marshall* v. *Hyundai Motor America*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. 2014).

As the magistrate judge explained, appellants' Section 349 claim "appears to be premised on Airbnb having failed to disclose in its Terms of Service its status as a real[] estate broker, attorney, and agent."  App. 11.  That claim accrued when the alleged deception took place:  that is, when appellants' former tenants read Airbnb's terms of service and elected to list their apartments on Airbnb's platform.  Because "[t]hose apartments had to have been listed at least one day prior to September 22, [2017]," the date the last fine was imposed by New York City, any deceptive conduct occurred more than three years before the filing of the complaint on September 22, 2020.  App. 12.  Consequently,

the district court was correct to conclude that appellants' Section 349 claim was time-barred. *See* App. 57-58.

Appellants claim that their Section 349 cause of action accrued when the City imposed fines on them, conceiving of that moment as their first injury. *See* Br. of Appellants 30. Not so. As explained, in the context of a claim involving misrepresentation (including a Section 349 claim), the relevant injury for accrual purposes occurs when a consumer is *deceived*, not when that consumer incurs financial loss as a result of the deception. *See Hyundai Motor America*, 51 F. Supp. 3d at 461. And given the allegations in appellants' complaint, the only moment deception could have occurred was when appellants' former tenants decided to transact on Airbnb after reading its terms of service. Appellants complain that it "makes no sense" that "the Airbnb hosts' listing of the[ir] apartment[s] with Airbnb and/or their receipt of its [t]erms of [s]ervice" could have "caused any injury" to appellants. Br. of Appellants 32. But that is merely a symptom of the problems with the theory of appellants' Section 349 claim, *see* pp. 36-39, *supra*, and it does not justify the conclusion that the claim is timely.

\*     \*     \*     \*     \*

Each of appellants' claims is barred by the applicable statute of limitations. The untimeliness of those claims provides an independent ground to sustain the district court's dismissal of appellants' complaint.

47

## IV. THE DISTRICT COURT APPROPRIATELY DENIED LEAVE TO AMEND

The district court dismissed appellants' complaint and denied leave to amend, reasoning that "any amendment would be futile." App. 60. Appellants did not propose specific amendments to the district court, and that court thus did not abuse its discretion in denying leave to amend. And even if this Court were to consider the amendments appellants propose for the first time in their opening brief, amendment would be futile.

### A. Appellants Proposed No Amendments Below

A district court's denial of leave to amend is reviewed for abuse of discretion. *See, e.g.*, *City of New York* v. *Group Health Inc.*, 649 F.3d 151, 156 (2d Cir. 2011). "Because an amendment is not warranted [a]bsent some indication as to what [the plaintiffs] might add to their complaint in order to make it viable, [a] [d]istrict [c]ourt [is] under no obligation to provide the [plaintiffs] with leave to amend their complaint" when they provide no details of what the amendments would include. *Horoshko* v. *Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (internal quotation marks and citation omitted). Put another way, "[i]n the absence of any identification of how a further amendment would improve upon the [c]omplaint, leave to amend *must* be denied as futile." *In re WorldCom, Inc., Securities Litigation*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004) (emphasis added).

48

Appellants first expressed an interest in amending their complaint in opposition to Airbnb's motion to dismiss, where they argued that they "should be given the right to correct any . . . pleading deficiencies" that existed in the complaint. Supp. App. 94. But appellants did not explain how they would amend their complaint to cure the issues Airbnb raised in its motion to dismiss. Instead, they simply incanted that "leave to amend a complaint under civil procedural rules is freely given." *Id.*

Over two years later, while Airbnb's motion to dismiss remained pending, appellants requested leave to amend via letter motion. *See* Supp. App. 110-111. There, appellants referred to "new claims arising from conduct that occurred subsequent to this filing" that they wanted to add to their complaint, and they also expressed a concern that the complaint was "longer than necessary," seeking permission to "shorten and clarify [their] arguments." *Id.* Again, appellants did not provide any details regarding specific amendments.

Because appellants did not propose specific amendments, the district court did not abuse its discretion by denying leave to amend. It was not the district court's responsibility to evaluate the viability of hypothetical edits to appellants' complaint. Rather, the district court's job was to evaluate any amendments appellants offered. Gesturing at "new claims" and "shorten[ed] and clarif[ied] arguments" falls far short of supplying the requisite content,

49

and courts routinely deny leave to amend in such circumstances. *See*, *e.g.*, *Ruffolo* v. *Oppenheimer & Co.*, 987 F.2d 129, 131-132 (2d Cir. 1993) (per curiam); *United States ex rel. Hussain* v. *CDM Smith, Inc.*, Civ. No. 14-9107, 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018). The district court's denial of leave to amend here was not an abuse of discretion.

### B.    Appellants Propose Only Futile Amendments Here

The Court need not go further, but even if the Court were to overlook appellants' failure to provide the district court with details of their proposed amendments, it should still uphold the denial of leave to amend on the ground of futility. Amendment is futile if a complaint would fail to state a claim even with the proposed amendments. *See*, *e.g.*, *Lucente* v. *International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Before this Court, appellants offer two proposed amendments for the first time: (1) an amendment setting forth "additional damages from Airbnb's unlawful rentals" and (2) an amendment adding a new claim that "Airbnb's hundreds of unlawful short term rentals constitute a private nuisance." Br. of Appellants 3-4. Neither of those amendments gives rise to a legally cognizable claim for relief.

1.    Permitting appellants to amend the amount in controversy would do nothing to cure the deficiencies with appellants' existing claims. Even if appellants were permitted to allege damages "exceed[ing] the $75,000 threshold needed for federal diversity jurisdiction," Br. of Appellants 19, they still

could not overcome the threshold problems that they forfeited appeal by failing to object to the report and recommendation and that they lack standing to assert the rights of others. Further, they could not overcome their failure to allege facts demonstrating a duty giving rise to a negligence claim; their failure to allege facts demonstrating fraudulent intent on Airbnb's part; and their failure to allege facts demonstrating a nexus between Airbnb's allegedly deceptive business practices and appellants' injuries. *See* pp. 26-39, *supra*. Nor could they show that their claims were brought within the applicable limitations periods. *See* pp. 39-47, *supra*. In short, a complaint that satisfies the amount-in-controversy requirement would still be subject to dismissal several times over.

2. Finally, appellants' proposed private nuisance claim would also be subject to dismissal for failure to state a claim.

a. Under New York law, a "private nuisance . . . must affect a relatively small number of people." *Baker* v. *Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 247-248 (N.D.N.Y. 2017), *aff'd in part and dismissed in part*, 959 F.3d 70 (2d Cir. 2020). The *Baker* court thus dismissed a private nuisance claim brought by "all renters and owners" in a town, citing the number of plaintiffs. *Id.* at 247-248; *see also Fresh Air for the Eastside, Inc.* v. *Waste Management of New York, LLC*, 405 F. Supp. 3d 408, 441

51

(W.D.N.Y. 2019). Appellants allege conduct that, in their words, affects "thousands of other NYC property owners when Airbnb uses their buildings to make its illegal profits through its unlicensed brokering services." Br. of Appellants 4. That is too large a class of affected individuals to assert a private nuisance claim.

b.  Second, appellants cannot show proximate cause. Under New York law, the defendant's tortious conduct must be a "'substantial cause' of the events creating the injury." *Wax NJ-2, LLC* v. *JFB Construction & Development*, 111 F. Supp. 3d 434, 457 (S.D.N.Y. 2015) (citing *Maheshwari* v. *City of New York*, 810 N.E.2d 894, 898 (N.Y. 2004)). But proximate cause can be "severed by a third party's intervening act if such an act is 'extraordinary under the circumstances,'" at which point the intervening act becomes the substantial cause of the injury. *Id.* (citing *Maheshwari*, 810 N.E.2d at 898 (quoting *Derdiarian* v. *Felix Contracting Corp.*, 414 N.E.2d 666, 670 (N.Y. 1980))). Here, a private nuisance claim would require appellants to establish that Airbnb's alleged tortious actions (i.e., "Airbnb's hundreds of unlawful short term rentals," Br. of Appellants 4) were a substantial cause of appellants' injuries—the fines the City imposed. But between Airbnb's conduct and the imposition of the City's fines was an intervening decision by appellants that can only be described as "extraordinary": the decision not to remediate after the

52

City's first inspection, which put them on notice of their tenants' unlawful activity. New York courts "have not been reluctant" to find proximate cause lacking as a matter of law where "the record reflected that one party's negligence was the sole proximate cause of an accident." *Gray* v. *Wackenhut Services, Inc.*, 446 Fed. Appx. 352, 354 (2d Cir. 2011) (collecting cases). Because appellants' failure to remediate was the sole proximate cause of the fines, their nuisance theory would fail as a matter of law. The district court correctly denied leave to amend.

## CONCLUSION

The appeal should be dismissed for lack of standing. In the alternative, the judgment of the district court should be affirmed.

Respectfully submitted,

/s/ Kannon K. Shanmugam

KANNON K. SHANMUGAM
ABIGAIL FRISCH VICE
THOMAS E. NIELSEN
KARINA M. SHAH
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *kshanmugam@paulweiss.com*

APRIL 23, 2025

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Kannon K. Shanmugam, counsel for appellee and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 32.1(a)(4), that the foregoing brief is proportionately spaced, has a typeface of 14 points or more, and contains 12,292 words.

APRIL 23, 2025

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM